IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CEDRIC DENT, | CIVIL ACTION NO. 2:23-cv-03104 |
| v. | JUDGE DARREL JAMES PAPILLION |
| JASON R. WILLIAMS, in his official capacity as Orleans Parish District Attorney, ABC INSURANCE COMPANIES 1-10, | MAGISTRATE KAREN WELLS ROBY **JURY DEMAND** |

## OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

After being imprisoned for almost 25 years for a crime he did not commit, Mr. Dent brings a claim against Defendant Jason Williams, in his official capacity, under 42 U.S.C. § 1983 for violating Mr. Dent's rights under *Brady v. Maryland*, 373 U.S. 83 (1963). R. Doc. 1 at ¶¶ 201–11. Defendant moves to dismiss Mr. Dent's claim, arguing only that "[w]hen a Louisiana district attorney appears in state court to prosecute a defendant for state-law crimes on behalf of the State of Louisiana, he or she is acting as a state officer" and so cannot be held liable under Section 1983. R. Doc. 11-1 at 3. But binding Fifth Circuit precedent dictates precisely the opposite: "[I]n a suit against a [Louisiana] district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999).

Defendant thus contends that the Fifth Circuit implicitly overruled *Burge* when it issued an en banc opinion in *Daves v. Dallas County*, 22 F.4th 522 (5th Cir. 2022). Five judges in this district have already rejected this argument, and even Defendant recognizes that *Daves* does not *mention*, much less directly overrule, *Burge* and that it at most "clarifies circuit precedent on several points and makes clear that § 1983 claims against municipalities must focus on which governmental entity an alleged policymaker was acting for." R. Doc. 11-1 at 5 (emphasis omitted). Defendant

offers no reasonable basis—nor could he—for this Court to ignore the precedent of *Burge*, which faithfully applied the still viable framework of *McMillian v. Monroe County*, 520 U.S. 781 (1997) to the identical circumstances presented by this case. Defendant's motion should be denied.

## BACKGROUND

Due to numerous constitutional violations by the Orleans Parish District Attorney's Office ("OPDA"), Cedric Dent was wrongfully convicted and served almost 25 years in prison for a crime he did not commit. From the time of Mr. Dent's arrest in 1997 through at least 2021, OPDA—in violation of its obligations under *Brady*, 373 U.S. 83, and its progeny—suppressed material favorable evidence.

The State's only evidence at trial was the testimony of Jerry Hamilton, the decedent's 18-year-old cousin who had viewed the perpetrator for a few moments in a dark lot. OPDA suppressed favorable information documenting Mr. Hamilton's numerous different and often conflicting accounts of what he had seen the night of the crime.

OPDA also suppressed at least three other key documents that contained several pieces of favorable information, including how Mr. Dent became a subject of the New Orleans Police Department's ("NOPD's") investigation, a potential death threat in a message left on the decedent's pager several hours before he was shot, a message from Mr. Hamilton left on the pager less than thirty minutes before the shooting, and the existence of a second witness named Rodney who provided a description of the perpetrator that did not match Mr. Dent's appearance.

Because OPDA suppressed this favorable information and failed to disclose it to defense counsel, Mr. Dent was convicted of second-degree murder by a non-unanimous jury. He was sentenced to life imprisonment without the possibility of parole.

The Orleans Parish Criminal District Court vacated Mr. Dent's conviction on August 8, 2022, and Mr. Dent was released from prison after serving almost 25 years for a crime he did not

commit.

Mr. Dent brings this action against District Attorney Jason Williams, in his official capacity, within one year of Mr. Dent's release from incarceration to recover damages under 42 U.S.C. § 1983 for the injuries he suffered and losses he sustained as a result of OPDA's policy and practice of violating the constitutional rights of defendants by not disclosing information favorable to their defense, and to hold OPDA accountable for depriving him of almost 25 years of freedom.

Now, using the same argument that five other judges of this Court have rejected in "materially indistinguishable cases," *Jones v. Williams*, No. 22-cv-5097, 2023 WL 3211865, at *3 (E.D. La. May 2, 2023),[1] Defendant moves to dismiss Mr. Dent's complaint, claiming that OPDA cannot face Section 1983 liability because a Louisiana district attorney acts on behalf of the State of Louisiana when prosecuting offenses, determining what evidence to disclose in the course of those prosecutions, and adopting policies relating to such disclosure. R. Doc. 11-1 at 3. As Chief Judge Brown and Judges Zainey, Africk, Milazzo, and Ashe have already held, Defendant's argument is foreclosed by decades-old Fifth Circuit precedent in *Burge v. Parish of St. Tammany*, misunderstands rules of precedent, and misconstrues the Fifth Circuit's reasoning in *Burge*. The motion to dismiss should be denied.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

---

[1] *See Williams v. Williams*, No. 23-cv-1922, 2023 WL 6160990 (E.D. La. Sept. 21, 2023) (Africk, J.); *Jones*, 2023 WL 3211865 (Ashe, J.); *Reeder v. Williams*, No. 22-cv-4614, 2023 WL 2771481 (E.D. La. Apr. 4, 2023) (Zainey, J.); *Smith v. Williams*, No. 22-cv-1550, 2023 WL 2263841 (E.D. La. Feb. 28, 2023) (Brown, C.J.); *Floyd v. Dillmann*, No. CV 19-8769, 2023 WL 2375362 (E.D. La. Mar. 6, 2023) (Milazzo, J.).

3

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In deciding a motion to dismiss, a court must accept all factual allegations in the complaint as true and "view all facts and inferences in the light most favorable to the nonmoving party." *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017).

## DISCUSSION

The Fifth Circuit's holding in *Burge*—that district attorneys in Louisiana are local government policymakers when designing and enforcing policies regarding the disclosure of favorable material—is and has been good law for over 24 years. *See* 187 F.3d at 468. Faced with this well-settled precedent, Defendant argues that *Daves v. Dallas County*, 22 F.4th 522—a case about the role of Texas county judges deciding bail policies under Texas law—implicitly overruled *Burge* and that a subsequent Fifth Circuit panel decision, *Arnone v. County of Dallas*, 29 F.4th 262 (5th Cir. 2022), confirms as much. However, neither case even mentions *Burge*, *Burge* is not incompatible with *Daves*, and the Fifth Circuit has never said that *Burge* has been overruled. Indeed, courts in this circuit, as well as the Fifth Circuit itself, continue to rely on *Burge*'s key holding post-*Daves*.

Five other judges of this Court have already held that Defendant's arguments rest on a misconstruction of the Fifth Circuit's analysis in *Burge*, including its proper application of the governing Supreme Court standard established in *McMillian*, as well as a misunderstanding of the Fifth Circuit's rules of precedent. This Court should follow suit.

**I.** ***Burge v. Parish of St. Tammany* properly applied controlling Supreme Court precedent to a similar Section 1983 claim, and *Burge* controls this case.**

Over 24 years ago, the Fifth Circuit in *Burge* addressed a Section 1983 claim similar to the one Mr. Dent raises here, properly applied governing Section 1983 caselaw, and held that, for

purposes of a Section 1983 official-capacity suit, district attorneys in Louisiana are local government policymakers with respect to the policies and practices they create regarding the disclosure of *Brady* material. *See Burge*, 187 F.3d at 468. That holding governs here and dictates that Mr. Dent has a valid claim not subject to dismissal under Rule 12(b)(6).

>    A.    *In* **Burge***, the Fifth Circuit properly applied controlling Supreme Court precedent to a similar Section 1983 claim.*

In *Burge*, the plaintiff had been convicted of second-degree murder and sentenced to life imprisonment without parole. After exculpatory evidence came to light, the plaintiff was granted a new trial and acquitted. He filed a Section 1983 suit against the St. Tammany Parish District Attorney and Sheriff, alleging that his due process rights had been violated by "the deliberately indifferent policies and customs of the Sheriff and the District Attorney, in their official capacities, regarding the supervision and training of employees in the handling of exculpatory evidence." *Id.* at 458. Mr. Dent, also convicted of second-degree murder and sentenced to life imprisonment without parole, similarly sues for due process violations by OPDA's policies and customs of failing to disclose exculpatory or favorable evidence.[2]

The plaintiff in *Burge* appealed from the district court's summary judgment dismissal of his Section 1983 claim against the District Attorney in his official capacity. As relevant here, the Fifth Circuit assessed whether,

> based on the evidence of record viewed in the light most favorable to Burge, a reasonable trier of the facts could conclude that the District Attorney in his official capacity is liable to Burge in damages under § 1983 for his constitutional injury due to the *Brady* violation caused by the District Attorney's failure to promulgate and

---

[2]    The plaintiff in *Burge* relied on a theory of deliberate indifference and failure to establish appropriate policies and to train. *See* 187 F.3d at 471. Mr. Dent alleges that OPDA had a longstanding policy and practice of violating defendants' constitutional rights by failing to disclose exculpatory or favorable information, and that its failure to adequately train or supervise its prosecutors amounted to deliberate indifference to defendants' constitutional rights under *Brady*. R. Doc. 1 at ¶¶ 17, 200.

> implement policies, training and procedures to assure that all
> evidence favorable to an accused obtained by the Sheriff's Office is
> conveyed to the District Attorney and disclosed to the defensed
> when the evidence is material either to guilt or to punishment.

*Id.* at 468. The court thus turned to *Monell v. New York City Department of Social Services*, noting

that "the Supreme Court held that a local government is liable under § 1983 for its policies that

cause constitutional torts." *Burge*, 187 F.3d at 468 (citing *Monell*, 436 U.S. 658, 694 (1978)). From

there, the court looked to the Supreme Court's controlling decision in *McMillian* to direct its

analysis. *Id.*; *see also* R. Doc. 11-1 at 8 ("[T]he controlling Supreme Court decision on the dual-

hat problem is *McMillian*." (quoting *Arnone*, 29 F.4th at 266)).

    As the Fifth Circuit explained, "[a] court's task is to identify those officials or

governmental bodies who speak with final policymaking authority for the local government actor

concerning the action alleged to have caused the particular constitutional or statutory violation at

issue." *Burge*, 187 F.3d at 468 (quotation marks omitted) (quoting *McMillian*, 520 U.S. at 784–

85). Critically, the court understood that "[t]he Supreme Court's cases on the liability of local

governments under § 1983 instruct us to ask whether governmental officials are policymakers for

the local government in a particular area, *or on a particular issue*, and that our inquiry is *dependent*

*on an analysis of state law*." *Id.* (emphasis added) (citing *McMillian*, 520 U.S. at 786); *see also id.*

("[O]ur understanding of the actual function of a governmental official, in a particular area, will

necessarily be dependent on the definition of the official's functions under relevant state

law." (quoting *McMillian*, 520 U.S. at 786)).

    Having established the framework for its analysis, the Fifth Circuit considered the

following two issues:

> (1) whether the District Attorney is the final official source for
> policies, training, and procedures to assure that all evidence
> favorable to an accused obtained by the Sheriff's Office is conveyed
> to the District Attorney and disclosed to the defense when the

> evidence is material either to guilt or to punishment; and (2) what entity is liable under § 1983 in an "official capacity" suit for a district attorney's policies that cause constitutional torts related to the failure to disclose material evidence favorable to criminal defendants.

*Id.* at 469. Applying the methodology set forth in *McMillian*, the Fifth Circuit reviewed Louisiana's state constitution and statutes regarding the role and authority of district attorneys, as well as analogous case law regarding the vicarious liability of sheriffs in Louisiana. *Id.* at 469–70 (citing La. Const. art. V, §§ 26–27; art. VI, §§ 5(G), 7(B), 25; La. Stat. §§ 16:1–912, 11:1581–87). The court then held:

> Considering the Louisiana constitutional and statutory law and tort cases, we conclude that, in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity.

*Id.* at 470.

*Burge* thus considered a similar Section 1983 claim against a Louisiana District Attorney in his official capacity, properly applied Supreme Court precedent governing how to analyze such a claim, and concluded that, in the very same context at issue here, the District Attorney is to be considered a policymaker for an independent local entity, *not* the state. That holding controls here, and Defendant's efforts to avoid *Burge* should be rejected. *See Jones*, 2023 WL 3211865, at *3 ("*Burge* necessitates the conclusion that a district attorney in Louisiana acts on behalf of the district attorney's office when making decisions regarding the disclosure of exculpatory evidence—not the state."); *Reeder*, 2023 WL 2771481, at *3 ("*Burge* does control and *Burge* remains good and binding law following *Daves*."); *Floyd*, 2023 WL 2375362, at *3 ("[T]he Fifth Circuit has already foreclosed a holding that a district attorney is acting for the State in creating *Brady* policies under Louisiana law.").

**B.**     ***Defendant cannot avoid* Burge *as precedent.***

Defendant makes two arguments for ignoring *Burge*'s holding. First, Defendant argues that *Burge* is not controlling here because the opinion did not "squarely" address whether "a Louisiana district attorney act[s] on behalf of the State of Louisiana, or on behalf of the 'district attorney's office' (an independent local governmental entity), when he or she creates policies relating to disclosure of evidence in prosecutions for state-law crimes." R. Doc. 11-1 at 19. Second, Defendant insists that *Burge*'s "reasoning has been undermined by *Daves* and cannot stand." *Id.*

The argument that *Burge* failed to analyze the proper question is simply incorrect. The Fifth Circuit resolved whether a district attorney in Louisiana acts on behalf of the state or a local entity when creating policies for disclosure of evidence in prosecutions for state-law crimes, and it determined that the district attorney acts for the local district attorney's office, a local entity. *See Jones*, 2023 WL 3211865, at *3 ("The *McMillian* Court, however, did not answer the precise question presented here—namely, does a Louisiana district attorney functionally act for the state or for a local governmental entity when making policy and decisions regarding the disclosure of exculpatory evidence. But the Fifth Circuit, applying *McMillian*, did."); *Smith*, 2023 WL 2263841, at *7 ("disagree[ing] with Defendant's characterization of *Burge*" and explaining that "[*Burge*] clearly answers the issue presented in the instant motion and finds that Louisiana district attorneys act as an independent local entity, not on behalf of the State, in creating policies for disclosure of evidence to criminal defendants under *Brady*").[3]

Defendant's effort to recast the question the *Burge* court answered as incompatible with the question the *Daves* court later addressed fails. *See* R. Doc. 11-1 at 16. *Both* decisions looked

---

[3]     As noted above, the plaintiff in *Burge* had been convicted of the state law crime of second-degree murder, just as Mr. Dent was in this case. *See supra* Part I.A; *see also Burge*, 187 F.3d at 457.

to Supreme Court precedent, as required, to resolve the same question. *See Daves*, 22 F.4th at 534 ("[I]mportantly, and obviously, the Supreme Court in *McMillian* stated how to determine in a Section 1983 suit whether an official was acting for a state or a local government."); *Burge*, 187 F.3d at 468–69 (relying on *McMillian* to frame court's question); *see also Williams*, 2023 WL 6160990, at *3 ("Both *Burge* and *Daves* rely on the analysis set forth in the Supreme Court case *McMillian v. Monroe County*. . . . The relevant inquiry was the power exercised by the officer in relation to the particular issue."); *id.* ("*Daves* does not change the inquiry under *McMillian*, and, therefore, it does not undermine the analysis in *Burge*."); *Floyd*, 2023 WL 2375362, at *3 ("Both *Daves* and *Burge* purport to apply the analysis set forth by the Supreme Court in 1997 in *McMillian*.").

Faced with the reality that *Daves* did not and could not change the methodology set forth in *McMillian*, *see Floyd*, 2023 WL 2375362, at *4 ("*Daves* did not create a new analysis, nor does its result have any relevance on what Louisiana law provides as to a district attorney making *Brady* policy."), Defendant misconstrues the Fifth Circuit's analysis in *Burge* to suggest that it is somehow out of step with *Daves*. Defendant asserts that the Fifth Circuit's analysis in *Burge* "was heavily influenced by a prior determination that a Louisiana district attorney is 'a local, not a state, government official' for purposes of Eleventh Amendment immunity," and "gave no weight to the factors that were deemed 'most relevant' in *Daves*." R. Doc. 11-1 at 19 (quoting *Burge*, 187 F.3d at 469; *Daves*, 22 F.4th at 537). Neither of these points is accurate, and neither supports a conclusion that the *Burge* court failed to answer the question now facing this Court.

Critically, Defendant ignores the fact that, after completing a separate and distinct Eleventh Amendment analysis, *see Burge*, 187 F.3d at 465–66, the court merely *referenced* that analysis in a single sentence leading into its Section 1983 analysis, *id.* at 469 ("As we noted earlier, for

9

purposes of Eleventh Amendment immunity, a district attorney, sued in his official capacity, is a local, not a state, government official and, therefore, is not entitled to such immunity."). The court then dedicated three paragraphs to analyzing Louisiana constitutional, statutory, and judicial law regarding the role and authority of district attorneys. *Id.* at 469–70. Defendant is therefore wrong to say that "*Burge* relied heavily on Eleventh Amendment sovereign immunity considerations that *Daves* held (for the first time) to be inapplicable." R. Doc. 11-1 at 19. Rather, the *Burge* court reviewed the guiding principles the Supreme Court set forth in *McMillian* for determining whether an official acts on behalf of the state or a local entity in a particular area or on a particular issue, *Burge*, 187 F.3d at 468–69, and the court concluded that in the context of setting *Brady* policies, a district attorney in Louisiana acts on behalf of the local entity, *id.* at 469–70; *see also Williams*, 2023 WL 6160990, at *3 ("While the *Burge* court separately conducted an Eleventh Amendment analysis, the *Burge* court also applied the *McMillian* framework to determine whether Louisiana district attorneys are acting on behalf of local government in creating *Brady* policies and how Louisiana law classifies Louisiana district attorneys.").

Turning to Defendant's second contention—that *Daves* "undermined" the *Burge* court's reasoning, R. Doc. 11-1 at 19—as discussed further below, *see infra* Part II.B, *Daves* does not even mention *Burge*, much less address or undercut its reasoning. And while Defendant may believe the *Burge* court reached the wrong conclusion (it did not), even wrongly-decided Fifth Circuit opinions are binding unless and until overturned by an intervening, contrary ruling of the Supreme Court or en banc Fifth Circuit. *See Floyd*, 2023 WL 2375362, at *3 ("Even assuming that Defendant's characterization of the *Burge* opinion has merit, this Court is not any less bound by the holding of *Burge*."); *Jones*, 2023 WL 3211865, at *3 ("'The district court [is] not free to overturn' binding Fifth Circuit precedent, notwithstanding an intervening change in the law

effected by post-precedent Supreme Court decisions." (quoting *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021))); *id.* ("[E]ven if the Fifth Circuit ultimately decides to revisit its holding in *Burge*, this Court is without the authority to preempt that prerogative.").

### C.     The **Burge** *court properly applied McMillian.*

*Burge* is controlling precedent regardless of how correctly decided. *See Williams*, 2023 WL 6160990, at *3 ("There is no need to conduct a comprehensive comparison of the similarities and differences between district attorneys in Texas and Louisiana because a separate analysis of each has previously been conducted in *Arnone* and *Burge*. As the reasoning of *Burge* has not been undermined, it remains binding precedent."). But, in any event, the *Burge* court correctly applied the Supreme Court's methodology in *McMillian* to the issue of whether Louisiana district attorneys act on behalf of a local entity when designing *Brady* policies. *See Smith*, 2023 WL 2263841, at *6–9.

Defendant bemoans that "*Burge* apparently gave no weight to the factors that were deemed 'most relevant' in *Daves*," R. Doc. 11-1 at 19, but in so doing misunderstands both *Burge* and *Daves*. For one, the Fifth Circuit in *Daves* did not claim to identify the factors "most relevant" in the Supreme Court's *McMillian* methodology. Rather, the court determined that, "[m]ost relevant" for its analysis of the "*structural plan in the Texas constitution*," "Texas law divides *state* judicial power among the different courts." *Daves*, 22 F.4th at 537 (first emphasis added). By this "most relevant" language, *Daves* did not purport to dictate what courts must consider above all else when applying *McMillian*'s factors. Rather, it emphasized that "reliance on those factors [outlined in *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999), regarding Eleventh Amendment immunity] can be misleading in Section 1983 analysis." *Daves*, 22 F.4th at 533. The *Burge* court, however, relied on *McMillian*—not *Hudson*—for its Section 1983 analysis. *See Floyd*, 2023 WL 2375362, at *3 (rejecting Defendant's identical argument "that the *Burge* court gave insufficient

weight to what *Daves* considered 'most relevant'"). Defendant thus fails to show that *Burge* misapplied the *McMillian* factors or came to the wrong conclusion.

In addition to the *McMillian* factors already analyzed in *Burge*, an analysis of Louisiana law further supports the *Burge* court's conclusion. Specifically, the Louisiana constitution does not vest district attorneys with state power, and the state legislature has consciously excluded district attorneys from those officials for whom the state takes legal responsibility.

**First**, the fact that the Louisiana constitution does not vest state power in district attorneys nor list them as part of any branch's department strongly supports the conclusion that district attorneys act on behalf of local entities. In *McMillian*, the Supreme Court looked to whether the state constitution vested sheriffs with state power. The Court focused on an amendment to the Alabama constitution that placed the "sheriff for each county" in the "executive department" alongside state officials like the governor, lieutenant governor, attorney-general, and secretary of state. 520 U.S. at 787; *see also Daves*, 22 F.4th at 538 (finding that Texas constitution's vesting of state power in county judges supported conclusion that they acted on behalf of the state).

Importantly here, the Louisiana constitution does *not* vest state power in district attorneys and does not list them as part of any branch's department. For the executive, legislative, and judicial branches, the constitution enumerates the exhaustive list of state officials in whom state power is vested.[4] District attorneys are referenced later in Article 5, relating to the judicial branch, *see* La. Const. art. V, § 26; however, "[i]n Article V, § 1 of the Louisiana Constitution, the only

---

[4]     *See* La. Const. art. III, § 1 ("The legislative power of the state is *vested* in a legislature, consisting of a Senate and a House of Representatives." (emphasis added)); art. IV, § 1 ("The executive branch shall consist of the governor, lieutenant governor, secretary of state, attorney general, treasurer, commissioner of agriculture, commissioner of insurance, superintendent of education, commissioner of elections, and all other executive offices, agencies, and instrumentalities of the state."); art. V, § 1 ("The judicial power is *vested* in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." (emphasis added)).

explicit grant of state power, judicial power is vested in the Louisiana Supreme Court, courts of appeal, district courts and other courts authorized within the Article." *Smith*, 2023 WL 2263841, at *8. "'These constitutional provisions indicate that a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office,' as a wholly autonomous local government official." *Id.* (quoting *Burge*, 187 F.3d at 469).

**Second**, the Louisiana legislature's decision to exclude district attorneys from the categories of officials for which the state is legally responsible also supports the conclusion that district attorneys act for a local entity when designing *Brady* policies. As noted above, the Supreme Court in *McMillian* stated that "the constitutional provisions concerning sheriffs, the *historical development* of those provisions, and the interpretation given them by the Alabama Supreme Court strongly support[ed]" the determination that sheriffs acted on behalf of the state. 520 U.S. at 787 (emphasis added). Specifically, the Court viewed the state legislature's amendment to the constitution as a "significant step[] in an attempt to solidify the place of sheriffs in the executive department, and to clarify that sheriffs were acting for the State when exercising their law enforcement functions." *Id.* at 787–88 (deeming it "especially important for our purposes" that previous versions of the constitution did not explicitly include sheriffs in the executive department).

In this case, the Louisiana legislature took clear steps to exclude district attorneys from the types of officials that the state indemnifies and is responsible for. In *Smith*, Chief Judge Brown conducted an extensive analysis of Louisiana legislative history on the issue. In 1983, the Louisiana Supreme Court held that "a district attorney's employee is an employee of the state for purposes of" a state indemnification statute. *Smith*, 2023 WL 2263841, at *8 (quoting *Diaz v. Allstate Ins. Co.*, 433 So. 2d 699, 700 (La. 1983)). Over the next two years, the Louisiana

13

legislature enacted statutes that expressly excluded district attorneys and their employees from the officials the State indemnifies in civil rights suits brought against them. *Id.* (citing La. Stat. § 13:5108.1(E)(3)(b)). As the Supreme Court did in *McMillian*,[5] Chief Judge Brown looked to Louisiana state court decisions interpreting these provisions and observed that "several intermediate appellate courts have found that the Louisiana Legislature's amendments to the indemnity and limitation of liability statutes evidence a strong legislative intent to designate Louisiana district attorneys as local officers that do not act for the State on the particular issue of their evidence disclosure policies and practices." *Id.* at 9 (citing *Obermier v. State*, 606 So. 2d 937, 939 (La. App. 3 Cir. 1992)).[6]

## II. *Burge* remains good law.

In his motion, Defendant states that *Daves* "established a new legal standard that is irreconcilable with, and therefore overrules, earlier circuit precedent." R. Doc. 11 at 2. Defendant's memorandum, however, never states that *Daves*—or *Arnone*, a Fifth Circuit panel decision—overruled *Burge*. *See generally* R. Doc. 11-1. Indeed, neither *Daves* nor *Arnone* mentions *Burge*, let alone expressly overrules it. Defendant fails to engage with Fifth Circuit authority regarding

---

[5]    *McMillian*, 520 U.S. at 789 ("Critically for our case, the Alabama Supreme Court has interpreted these provisions and their historical background as evidence of the framers' intent to ensure that sheriffs be considered executive officers of the state." (quotation marks omitted)).

[6]    Defendant's characterization of the *Smith* court's careful analysis of Louisiana legislative history is reductive. Citing *McMillian* and *Daves*, Defendant contends that the court in *Smith* should not have considered whether the State is liable for the actions of district attorneys. R. Doc. 11-1 at 25. But the *Smith* court already responded to this argument in a lengthy footnote:

> Defendant fails to credit the significant differences between the clearly expressed legislative intent underscoring the 1984 and 1985 amendments in Louisiana and the legislative developments in Texas and Alabama. In those instances, there were no significantly immediate departures from the previous interpretations regarding which sovereign, the state or municipality, that the local official policymakers operated for in the exercise of their duties.

2023 WL 2263841, at *9 n.136.

how panel decisions can be overturned, resulting in what appears to be an implied argument that *Daves* and *Arnone* implicitly overruled *Burge*. If Defendant is making such an argument, it fails; *Burge* has not been overruled. *See Williams*, 2023 WL 6160990, at *2 ("The Fifth Circuit has not overturned *Burge*."); *Reeder*, 2023 WL 2771481, at *3 ("[N]o legitimate argument can be made that the en banc *Daves* decision overruled *Burge*."); *Floyd*, 2023 WL 2375362, at *3 ("[T]his Court does not agree with Defendant that *Daves* overrules *Burge*.").

> ### A.      The Fifth Circuit has a clear process for overruling precedent.

"It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014) (citation omitted). "This rule is strict and rigidly applied." *Bonvillian*, 19 F.4th at 792. "Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." *Traxler*, 764 F.3d at 489 (citation omitted) (collecting cases).  "For a Supreme Court [or en banc] decision to change [the Fifth] [C]ircuit's law, it must unequivocally overrule prior precedent." *Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231, 234 (5th Cir. 2023) (alteration omitted) (quoting *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012)). "Neither a mere hint of how the Supreme Court might rule in the future, nor a decision that is merely illuminating with respect to the case before [the Fifth Circuit] will permit a subsequent panel to depart from circuit precedent." *Id.* (quotation marks, internal citations, and alterations omitted).

Defendant appears to recognize that *Daves*—the only en banc decision Defendant cites that

could conceivably have overruled *Burge*[7]—cannot have directly overruled *Burge*, since *Daves* fails even to mention *Burge*.[8] The question, then, is whether *Burge*'s holding is incompatible with *Daves* such that it must be deemed overruled. The Fifth Circuit has held that "where an intervening Supreme Court decision 'fundamentally changes the focus of the relevant analysis,' our precedents relying on that analysis are 'implicitly overruled.'" *Id.* (quoting *Bonvillian*, 19 F.4th at 792). Even assuming this applies to en banc Fifth Circuit opinions, as well, the court has specified that "this is only true when the changed analysis clearly applies to the case before us, such that we are 'unequivocally directed by controlling Supreme Court precedent' to 'overrule the decision of [the] prior panel.'" *Id.* (alteration in original) (citation omitted). The Fifth Circuit has "specifically rejected the idea that later Supreme Court and other decisions that were not directly on point could alter the binding nature of our prior precedent." *Traxler*, 764 F.3d at 489 (citing *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)); *see also Martinelli*, 65 F.4th at 244 (same).

**B.** **Daves *did not overrule* Burge.**

Considering the Fifth Circuit's rules of precedent, *Daves* cannot have "unequivocally" overruled *Burge*. *Martinelli*, 65 F.4th at 234 (citation omitted). *Daves* is not "directly on point," and it did not "fundamentally change[] the focus of the relevant analysis." *Id.* at 234, 244 (citation omitted); *see also id.* at 243–44 (holding that a Supreme Court decision did not unequivocally overrule a prior Fifth Circuit decision because it was not "directly on point" and "left room for exceptions, including an exception upon which our court might have relied"). Because *Burge* can

---

7   Defendant cites no intervening Supreme Court opinion, and *Arnone* is a Fifth Circuit panel decision incapable of overruling *Burge* on its own.

8   Defendant varies between describing *Burge* as "abrogated" and "undermined" by *Daves*. *See* R. Doc. 11-1 at 14, 17. Although he criticizes the decisions by other judges of this Court holding that *Burge* has not been overruled, *id.* at 20–30, Defendant—perhaps aware that the Fifth Circuit rules of precedent prevent reaching further—stops short of openly stating that *Daves* "overruled" or "overturned" *Burge*.

be reconciled with *Daves*, *Burge* remains good law and controls here.

In *Daves*, the court analyzed Texas law to determine whether county judges acted on behalf of the state of Texas when they promulgated bail schedules. That issue is far afield from the one decided in *Burge*—whether district attorneys in Louisiana act on behalf of a local entity, rather than the state of Louisiana, when designing *Brady* policies. *See Reeder*, 2023 WL 2771481, at *3 ("Given that *Daves* dealt with the role of judges under Texas law, no legitimate argument can be made that the en banc *Daves* decision overruled *Burge*."); *Smith*, 2023 WL 2263841, at *7 ("*Daves* and *Arnone* are not determinative because both of those cases involved interpretation of Texas law."); *Floyd*, 2023 WL 2375362, at *4 ("Accordingly, *Daves* did not create a new analysis, nor does its result have any relevance on what Louisiana law provides as to a district attorney making *Brady* policy.").

Pointing to *Arnone*, Defendant asserts that *Daves* was not limited to Texas judges and instead "established a general methodology that applies to other officials as well." R. Doc. 11-1 at 31. But the Supreme Court in *McMillian*—not the Fifth Circuit in *Daves*—established the general, controlling methodology for analyzing the role of government officials. The en banc court in *Daves* did not purport to amend that framework, nor could it. *Cf. Daves*, 22 F.4th at 534 (acknowledging that "nothing [in a Fifth Circuit decision] can override a Supreme Court decision").

### C. **Arnone *did not, by itself or in conjunction with* Daves*, overrule* Burge*.**

Defendant also relies on *Arnone* for the implication that *Burge* has been overruled and does not control here. However, *Arnone*—a panel decision—cannot itself have overruled a prior panel decision, *see Traxler*, 764 F.3d at 489, and *Arnone* fails to support Defendant's contention that *Daves* overruled *Burge*.

First, as with *Daves*, *Arnone* concerned Texas law, and it fails even to mention *Burge*. Moreover, while a Fifth Circuit panel can *recognize* that an intervening change in law warrants

overruling a prior panel's decision, a panel decision cannot itself serve as a basis to overrule precedent. *See Bonvillian*, 19 F.4th at 792. That is, *Arnone* is a panel decision and therefore cannot have altered the binding nature of the Fifth Circuit's *Burge* precedent.

Second, *Arnone* did not "determine that [*Burge*] has fallen unequivocally out of step with some intervening change in the law." *Id.* Defendant claims that in *Arnone*, "the Fifth Circuit has already recognized that its earlier jurisprudence on whether Texas district attorneys act on behalf of the state was implicitly overruled by the *en banc* decision in *Daves*." R. Doc. 11-1 at 17 n.8 (citing *Arnone*, 29 F.4th at 270–72); *see also id.* at 22. For one, this says nothing about district attorneys in *Louisiana*, and *McMillian* demands a state-specific inquiry. *See Burge*, 187 F.3d at 469 ("[O]ur understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." (quoting *McMillian*, 520 U.S. at 786)); *see also Williams*, 2023 WL 6160990, at *3 ("While defendant points to similarities between district attorneys and county judges in Texas and district attorneys in Louisiana, these similarities are not determinative. The court in *McMillian* said, 'since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another.'" (quoting 520 U.S. at 795)).

Additionally, the "earlier jurisprudence" to which Defendant refers is the Fifth Circuit's decision in *Crane v. Texas*, where the court held that Dallas County district attorneys act on behalf of the county, not the state. 759 F.2d 412 (5th Cir.), *reh'g denied*, 766 F.2d 193 (5th Cir. 1985) (per curiam). Even if it had implications for the Court's analysis of Louisiana (it does not), Defendant's characterization is incorrect for two reasons. ***First***, as a basic matter, the Fifth Circuit in *Arnone* discussed *Crane* but did not suggest that it had been "overturned" or "overruled," and

such language appears nowhere in the opinion. **Second**, *Arnone* recognized that *Crane* was decided before *McMillian* and accordingly did not analyze whether Dallas County district attorneys act on behalf of the state in a particular area. *Arnone*, 29 F.4th at 270 ("Put simply, both *McMillian* and *Daves* were decided after *Crane*, and both decisions undermine it."); *see also id.* at 272 ("[B]oth *McMillian* and *Daves* explain that what matters is the precise 'function' that the policymaker is exercising."). While *Arnone* may have questioned *Crane* in light of the intervening decisions of the Supreme Court and the en banc Fifth Circuit in *McMillian* and *Daves*, that hardly supports the conclusion that *Daves* alone overruled *Burge*, an opinion issued after *McMillian* and concerning an entirely different state's laws.[9]

## III.   Courts in this circuit, and the Fifth Circuit itself, continue to rely on *Burge*.

Contrary to *Daves* and *Arnone*, both of which concern Texas law and nowhere mention *Burge*, in a disposition issued only nine months ago, the Fifth Circuit cited *Burge* for the principle that district attorneys in Louisiana are local government policymakers. *See Kimble v. Jefferson Par. Sheriff's Off.*, No. 22-30078, 2023 WL 1793876 (5th Cir. Feb. 7, 2023). This lends even more

---

[9]     Defendant seems to suggest that it is not fair district attorneys in Louisiana are subject to Section 1983 liability when their peers in Texas and Mississippi may be immune from such suit. *See* R. Doc. 11 at 2; *see also* R. Doc. 11-1 at 30. But the Supreme Court has already rejected this argument. In *McMillian*, the petitioner complained about "an unacceptable patchwork of rulings as to § 1983 liability of counties for the acts of their sheriffs." 520 U.S. at 793. The Court explained that whether a certain type of official acts on behalf of a state or county would naturally vary across states:

> [W]hile it might be easier to decide cases arising under § 1983 and *Monell* if we insisted on a uniform, national characterization for all sheriffs, such a blunderbuss approach would ignore a crucial axiom of our government: the States have wide authority to set up their state and local governments as they wish. . . . *Thus, since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another.*

*Id.* at 795 (emphasis added). Because the inquiry as to whether district attorneys in Louisiana act for local entities with respect to *Brady* policies "is dependent on an analysis of state law," *id.* at 786, it is not surprising that analysis of other states' district attorneys and laws might produce different results.

support to the five other judges of this Court who have rejected Defendant's arguments.

In *Kimble*, the plaintiff filed a Section 1983 action against numerous defendants, including an assistant district attorney in both her official and individual capacity. On appeal, the Fifth Circuit first made clear that the assistant district attorney was "an arm of Jefferson Parish" and quoted *Burge* for the proposition that "[f]or purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities." *Id.* at *3 (quoting *Burge*, 187 F.3d at 470). The Fifth Circuit then affirmed the district court's dismissal of the claim against the assistant district attorney on the grounds of prosecutorial immunity and the fact that the plaintiff had failed to allege that *assistant* district attorneys are final policymakers for the district attorney's office or parish. *Id.* at *3–4.[10]

Defendant fails to identify a single case in which the Fifth Circuit has questioned—in an en banc decision, panel decision, concurrence, or dissent—*Burge*'s holding that, for the purposes of a Section 1983 official capacity suit, district attorneys in Louisiana are local government policymakers for policies and practices related to *Brady* material. And the Supreme Court has never overruled *McMillan*, on which *Burge* relied, or undermined its approach.

Indeed, as Defendant acknowledges, in five separate cases other judges of this Court have denied motions to dismiss by the District Attorney's Office "raising the same arguments raised in the present motion." R. Doc. 11-1 at 22; *see also Williams*, 2023 WL 6160990; *Jones*, 2023 WL

---

[10]     Defendant's attempt to distinguish *Kimble*'s reliance on *Burge* is misplaced. Defendant asserts that *Kimble*, "rather than demonstrating that the Fifth Circuit has reaffirmed the reasoning and result of *Burge*, . . . provides further reason to doubt its validity." R. Doc. 11-1 at 24. But Defendant provides no explanation for why this would be. Instead, he highlights that "no party discussed" *Daves* or "argued that *Burge* has been abrogated in part." *Id.* For one, *Daves* overruled *Burge* or it did not, regardless of whether parties argue that it did. Second, this only raises the question of how *Kimble*, a panel disposition, could undermine *Burge* without even citing the supposed intervening change of law, *Daves*. Defendant's other argument—that *Kimble* "contradicts *Burge*" by referring to "*the parish*" instead of an "independent local entity," *id.* (citation omitted)—fares no better and is simply irrelevant to whether *Burge* dictates the outcome here.

3211865; *Reeder*, 2023 WL 2771481; *Smith*, 2023 WL 2263841; *Floyd*, 2023 WL 2375362. Defendant asserts a litany of baseless criticisms against the decisions. Judge Ashe, on the other hand, correctly explained that the rulings are "thoughtful, well-reasoned, and correct in their application of the binding precedent of *Burge*." *Jones*, 2023 WL 3211865, at *3.

The errors that undermine Defendant's criticisms of these other decisions are the same that pervade his arguments in this case. ***First***, Defendant repeatedly misreads the decisions. For example, Defendant asserts that the "[*Floyd*] court made no attempt to defend the correctness of the *Burge* decision or explain how the same result could be reached considering the factors relied on in *Daves*." R. Doc. 11-1 at 22–23. This ignores Judge Milazzo's reasoning for why *Daves* did not overrule *Burge*. Explaining why *Daves* is irrelevant, the *Floyd* court correctly stated:

> *McMillan* is clear that the question to be considered is what *state* law provides as to the specific relevant function being challenged. The court in *Daves* applied Texas law to Texas policymakers performing different functions than are at issue here. Accordingly, *Daves* did not create a new analysis, nor does its result have any relevance on what Louisiana law provides as to a district attorney making *Brady* policy.

2023 WL 2375362, at *4. As a district court judge, Judge Milazzo was under no obligation to "defend the correctness" of binding Fifth Circuit precedent. R. Doc. 11-1 at 22.

***Second***, Defendant repeatedly and improperly tries to establish *Daves*—not *McMillian*—as the relevant governing standard by erroneously claiming that the Fifth Circuit established a new test in *Daves*. *Id.* at 25 (criticizing *Smith*); *id.* at 30 (criticizing *Reeder*).[11] As discussed above and as the *Floyd* court pointed out, *Daves* simply applied the Supreme Court's controlling precedent in *McMillian* to the context of Texas county judges, and the Fifth Circuit did not purport to add to

---

[11]     *See also id.* at 25 ("*Daves* explains that § 1983 requires courts to examine 'state law' to 'identify the level of government for which an official was acting when establishing the policy that is relevant to the claims.'").

that methodology. *See supra* Part II.B, *see also Floyd*, 2023 WL 2375362, at *4 ("*Daves* did not create a new analysis, nor does its result have any relevance on what Louisiana law provides as to a district attorney making *Brady* policy.").

**Third**, Defendant misconstrues the Fifth Circuit's reasoning in *Burge*. In criticizing Judge Africk's decision in *Williams*, Defendant again asserts that *Burge* "relied on the Eleventh Amendment sovereign immunity factors." R. Doc. 11-1 at 32. As discussed above, *see supra* Part I.B–C, the Fifth Circuit's analysis applied the methodology set forth in *McMillian*. Indeed, the *Williams* court already highlighted Defendant's error. *See* 2023 WL 6160990, at *3 ("While the *Burge* court separately conducted an Eleventh Amendment analysis, the *Burge* court also applied the *McMillian* framework to determine whether Louisiana district attorneys are acting on behalf of local government in creating *Brady* policies and how Louisiana law classifies Louisiana district attorneys.").

**Finally**, Defendant misconstrues the rules of precedent and the authority of district courts. For example, in *Jones*, Judge Ashe explained that "Even if the Fifth Circuit ultimately decides to revisit its holding in *Burge*, this Court is without the authority to preempt that prerogative." 2023 WL 3211865, at *3 (citing *Bonvillian*, 19 F.4th at 789). In *Bonvillian*, the Fifth Circuit determined that a Supreme Court decision had implicitly overruled a prior panel decision. 19 F.4th at 789. Even when doing so, the Fifth Circuit recognized the uncontroversial principle that a "district court [i]s not free to overturn" circuit precedent, notwithstanding an intervening change in the law effected by post-precedent Supreme Court decisions. *Id.*[12] In response, Defendant "respectfully

---

[12]     *See also Jaime v. Blinken*, No. EP-22-CV-248-KC, 2023 WL 2657651, at *1 n.1 (W.D. Tex. Mar. 24, 2023) (holding that whether a ruling "represents an 'intervening Supreme Court decision' that undermines the Fifth Circuit's prior holdings is a question for the Fifth Circuit, not" the district court (quoting *Bonvillian*, 19 F.4th at 789)).

disagrees that a district court lacks the authority to follow the methodology required under more recent *en banc* appellate precedent and reach the result logically required by that methodology, even if that result cannot be reconciled with earlier circuit precedent." R. Doc. 11-1 at 31. Defendant cites no authority in support of this proposition, and Mr. Dent is aware of none.

## CONCLUSION

For the foregoing reasons, Defendant Jason Williams's Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Chloé M. Chetta*

Chloé M. Chetta, 37070
Robert A. Waldrup, 37345
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras St., Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
cchetta@barrassousdin.com
rwaldrup@barrassousdin.com

AND

Blair G. Brown* D.C. Bar No. 372609
Casey Trombley-Shapiro Jonas**
D.C. Bar No. 1670754
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106
bbrown@zuckerman.com
cjonas@zuckerman.com

AND

Josh T. Mathew*
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Telephone: (212)704-9600
Facsimile: (212) 704-4256
jmathew@zuckerman.com

*Admitted pro hac vice
**Applied for admission pro hac vice

Attorneys for Plaintiff Cedric Dent