**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CEDRIC DENT, | Civil Action No. 23-03104 |
| *Plaintiff*, | |
| | Section P |
| v. | Judge Darrel James Papillion |
| JASON WILLIAMS, in his official capacity as Orleans Parish District Attorney, and ABC INSURANCE COMPANIES 1-10, | Division 4 |
| | Magistrate Judge Karen Wells Roby |
| *Defendants*. | |

**<u>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

Jason R. Williams, in his official capacity as Orleans Parish District Attorney, through undersigned counsel, respectfully submits the following reply to the opposition memorandum filed by Plaintiff Cedric Dent, Doc. No. 13, and in support of his motion to dismiss Mr. Dent's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), Doc. No. 11.

**I.    Mr. Dent's allegations of *Brady* violations by the District Attorney's Office have never been accepted by any court and are nothing more than an attempt to cast blame on the agency that helped him obtain his freedom.**

Mr. Dent argues that he was "wrongfully convicted and served almost 25 years in prison for a crime he did not commit" because of "numerous constitutional violations by the Orleans Parish District Attorney's Office." Doc. No. 13 at 2. However, no court has ever found that Mr. Dent is innocent of the 1997 murder for which he was convicted. Nor has any court ever found that his constitutional rights were violated by the District Attorney's Office. Indeed, Mr. Dent's various efforts to challenge his conviction in the state and federal courts were repeatedly denied. Notwithstanding these denials, after Jason Williams took office as Orleans Parish District Attorney in 2021, his newly created Civil Rights Division undertook a review of Mr. Dent's conviction.

Ultimately, the District Attorney's Office, on behalf of the State, voluntarily waived the procedural bars to Mr. Dent's claims and moved to vacate his conviction on the grounds that (1) he was convicted by a non-unanimous jury, in violation of *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020); and (2) his trial counsel provided constitutionally ineffective and prejudicial assistance. The District Attorney's Office did not agree, and no court determined, that evidence was withheld from Mr. Dent in violation of *Brady v. Maryland*.

Nevertheless, after obtaining his freedom with the assistance of OPDA's Civil Rights Division, Mr. Dent chose to sue the District Attorney's Office and blame it for his conviction. The District Attorney's Office does not agree that evidence was withheld from Mr. Dent in violation of the constitution or that any alleged nondisclosure was the result of an official policy. And even if Mr. Dent could prove these elements, the District Attorney's Office would not be liable because its agents were acting on behalf of the state throughout Mr. Dent's prosecution.

**II.    The Fifth Circuit's *en banc* decision in *Daves v. Dallas County* is controlling and dispositive.**

If this Court applies the analysis of *Daves v. Dallas County*, 22 F.4th 522 (5th Cir. 2022) (en banc), to the facts of this case—looking to the factors that *Daves* found to be important, and ignoring the factors that were ignored in *Daves*—it will reach the conclusion that the Orleans Parish District Attorney and his employees were acting on behalf of the State of Louisiana at all relevant times. *See* Doc. No. 11-1 at 5–7, 10–14. Mr. Dent makes no serious attempt to demonstrate otherwise. At no point in his opposition does he attempt to explain the reasoning that led to the Fifth Circuit's ultimate conclusion in *Daves* or to apply that same reasoning to this case. Instead, he maintains that there is no *"Daves* analysis" at all. He argues that *Daves* "simply applied the Supreme Court's controlling precedent in *McMillian*," which it "did not and could not change."

Doc. No. 13 at 9, 21. He insists that *Daves* "did not purport to amend" or "add to" *McMillian* or to "establish[ ] a new test." *Id.* at 17, 21–22.

But this interpretation of *Daves* has already been refuted by the Fifth Circuit itself. In *Arnone v. County of Dallas County*, 29 F.4th 262, 267 (5th Cir. 2022), decided several months after *Daves*, the Fifth Circuit explained that *Daves* "***clarifies*** how to attribute a policymaker's actions under *McMillian*." (Emphasis added). And throughout the opinion, the panel cited and applied both *McMillian **and** Daves* to analyze the question presented. *See, e.g.*, *id.* at 268 ("Applying *McMillian* and *Daves*, the district attorney acted as a state—not county—policymaker in promulgating or acquiescing to the polygraph policy."). If *Daves* were nothing more than a straightforward application of *McMillian*, there would of course be no reason to do this.

Mr. Dent's characterization of *Daves* is also belied by the fundamental disagreements among the *en banc* Fifth Circuit judges as to how *McMillian* should be interpreted and applied. The nine judges in the *Daves* majority concluded that the factors typically used to analyze Eleventh Amendment/sovereign immunity—including "the source of funding"—can be "misleading" in the § 1983 analysis required under *McMillian*. *See Daves*, 22 F.4th at 532–33. However, the four dissenting judges disagreed, arguing that "the two matters are undeniably intertwined," and that the Eleventh Amendment factors could properly be considered in the *McMillian* analysis. *See id.* at 555–56 (Haynes, J., dissenting). These differences in methodology led to different answers to the ultimate question of whether Texas county judges act on behalf of the state when making policies related to bail.

Mr. Dent's suggestion that *Daves* could not change or add to the analysis required under *McMillian* is also incorrect. It is true that the Fifth Circuit does not have the power to overrule a Supreme Court decision. But the federal circuit and district courts often disagree on how to

interpret or apply Supreme Court decisions; indeed, resolving "circuit splits" is one of the Supreme Court's major roles in the federal court system. And the Fifth Circuit's *interpretation* of Supreme Court jurisprudence is indisputably binding on the district courts within its territory. As inconvenient as it is for Mr. Dent's case, *Daves* cannot simply be ignored.

Mr. Dent argues that "*Daves* did not purport to dictate what courts must consider above all else when applying *McMillian*'s factors," Doc. No. 13 at 11, but this is not a fair reading of the opinion. The majority found it essentially dispositive that the Texas Constitution vests county courts with the judicial power of the state. *See Daves*, 22 F.4th at 537–38. The dissenting judges pointed out various factors that, in their view, show that Texas county judges act on behalf of their counties: for example, that "the County Judges are paid by the county"; that "the fees they collect go straight into the county coffers"; that they "have significant local autonomy"; and that their "primary area of concern is . . . local." *See id.* at 556–57. Yet the majority found these factors to be "misleading," specifically explaining that courts should not "prioritize identifying the source of the overall funding or the primary concern of the entity or official." *See id.* at 533. This guidance from the *en banc* Fifth Circuit is not merely advisory—it establishes binding precedent as to how courts must determine which municipality an official acts on behalf of in a § 1983 lawsuit.

III. **The 1999 Fifth Circuit panel decision in *Burge v. Parish of St. Tammany* has been implicitly overruled in relevant part by *Daves*.**

Considering the *Burge* analysis in light of *Daves*, it is clear that *Burge* has been implicitly overruled and cannot stand. *Burge* cited, but did not discuss, and apparently gave no weight to, the language in the Louisiana Constitution providing that "a district attorney has charge of every criminal prosecution by the State in his district." *See Burge*, 187 F.3d at 469. Yet *Burge* placed significant weight on its finding that a district attorney is an "independent" and "virtually autonomous local government official." *See id.* at 469–70. *Burge* also relied on its "infer[ence]"

that "the office of the district attorney as an independent local government entity" would be vicariously liable "for the torts of a district attorney's employees under state law." *See id.* Thus, *Burge* gave no weight to the factor that was deemed most important in *Daves* and relied heavily on two factors (funding and local autonomy) that were cited by the ***dissenting*** judges in *Daves* and disapproved by the majority.

Mr. Dent argues that *Burge* has not been overruled because it "can be reconciled with *Daves*." Doc. No. 13 at 16–17. But his only attempt to reconcile the two decisions is to point out that *Daves* concerned different officials in a different state. *See id.* at 17. This does not reconcile anything. *McMillian* also concerned different officials in a different state (Alabama sheriffs), yet it established binding precedent as to how lower courts should analyze the same issues with respect to other officials in other states. The same is true of *Daves*. Mr. Dent simply refuses to acknowledge the change in Fifth Circuit jurisprudence effected by *Daves*. He makes no attempt to show how *Burge*, or his own case, would turn out following the same analysis employed in *Daves*.

Mr. Dent suggests that *Daves* is not sufficiently clear to overrule *Burge*. But *Martinelli v. Hearst Newspapers, LLC*, 65 F.4th 231 (5th Cir. 2023), which Mr. Dent cites in his opposition, explains that a Fifth Circuit decision is "implicitly overruled" if "the Supreme Court disavows the mode of analysis on which [the circuit] precedent relied." *Id.* at 234 (quotations omitted).[1] *Martinelli* also explains that "where an intervening Supreme Court decision fundamentally changes the focus of the relevant analysis, [circuit] precedents relying on that analysis are implicitly overruled." *Id.* (quotation omitted). As explained above and in the initial memorandum, the "mode of analysis" on which *Burge* relied has been disavowed in *Daves*, and the focus of the

---

[1] The same principle would presumably apply to a decision of the *en banc* Fifth Circuit, since an *en banc* decision has the same power to "overturn another panel's decision." *See Martinelli*, 65 F.4th at 234 (quotation omitted).

analysis had been fundamentally changed. This change is "unequivocal," and not "merely illuminating" or a "hint" of how the Fifth Circuit may rule in the future. *See id.* at 234 (quotation omitted).

Mr. Dent argues that district courts have no authority to decide that a Fifth Circuit decision has been implicitly overruled by a subsequent *en banc* or Supreme Court ruling. *See* Doc. No. 13 at 22–23. However, district courts can, and often do, find precedential appellate decisions to be implicitly overruled when it is sufficiently clear.[2]

Mr. Dent argues that the Fifth Circuit has "continue[d] to rely on *Burge*" since *Daves* was decided. Doc. No. 13 at 19. He cites *Kimble v. Jefferson Parish Sheriff's Office*, No. 22-30078, 2023 WL 1793876 (5th Cir. Feb. 7, 2023), an unpublished per curiam decision that did not consider whether *Burge* had been overruled. *See also* Doc. No. 11-1 at 23 (discussing further). The Fifth Circuit has explained, however, that "[a]n opinion restating a prior panel's ruling does not *sub silentio* hold that the prior ruling survived an uncited Supreme Court decision." *Gahagan v. U.S. Citizenship & Immigration Servs.*, 911 F.3d 298, 302 (5th Cir. 2018). *Kimble* reveals nothing at all about whether *Burge* can be reconciled with *Daves* or how the Fifth Circuit might decide the issues raised by the present motion.

---

[2] *See, e.g.*, *Collins v. ABC Marine Towing, LLC*, No. 14-cv-1900, 2015 WL 5254710, at *5 (E.D. La. Sep. 9, 2015) (holding that Fifth Circuit precedent had been "effectively overruled" by a subsequent Supreme Court decision that "calls into question [its] legal reasoning and conclusions"); *Gahagan v. U.S. Citizenship and Immigration Servs.*, No. 16-cv-15438, 2017 WL 4003851, at *2 (E.D. La. Sep. 12, 2007) (holding that Fifth Circuit precedent was implicitly overruled by a subsequent Supreme Court decision); *Anglada v. Tidewater, Inc.*, 752 F. Supp. 722, 725 (E.D. La. 1990) (same); *Currier v. Entergy Corp. Employee Benefits Comm.*, No. 16-cv-2793, 2016 WL 6024531, at *2–5 (E.D. La. Oct. 14, 2016) (same); *Gusman v. New Orleans City*, No. 15-cv-5236, 2015 WL 8207473, at *3 (E.D. La. Dec. 8, 2015) (same); *United States v. Land*, No. 13-cv-4722, 2014 WL 5480824, at *2 n.2 (E.D. La. Oct. 29, 2014) (holding that Fifth Circuit precedent was implicitly overruled by a statutory amendment); *St. Luke #2, LLC v. Hermes Health Alliance, LLC*, 644 F. Supp. 3d 289, 296–97 (E.D. La. 2022) (holding that Fifth Circuit precedent was either superseded by statute or "implicitly overruled by the Supreme Court").

Moreover, as discussed in the initial memorandum, *Kimble* is hardly helpful in showing the continuing viability of *Burge* because it **misstates** the relevant holding of *Burge*. *See* Doc. No. 11-1 at 24–25. *Kimble* held that the prosecutor in question "acted as an arm of Jefferson Parish, the governmental entity she represented," *Kimble*, 2023 WL 1793876, at *3, whereas *Burge* held that a prosecutor acts on behalf of "an **independent** local entity"—not the parish. *See Burge*, 187 F.3d at 470 (emphasis added). Mr. Dent suggests that this discrepancy is "irrelevant," Doc. No. 13 at 20 n.10, but it is enormously relevant to the District Attorney's Office. If, as *Kimble* states, a Louisiana prosecutor acts on behalf of the parish, then Orleans Parish—not the District Attorney's Office—would be the proper defendant.

**IV.    Mr. Dent's efforts to show that Louisiana district attorneys do not act on behalf of the state are based on false premises and are unpersuasive.**

Aside from *Daves* and questions of precedent, Mr. Dent briefly attempts to defend the holding of *Burge* on the merits. *See* Doc. No. 13 at 11–14. However, these efforts only serve to illustrate the lack of support for that holding. Mr. Dent argues that it is "[i]mportant[ ]" that "the Louisiana constitution does *not* vest state power in district attorneys and does not list them as part of any branch's department." Doc. No. 13 at 12. These factors are indeed important, but both of Mr. Dent's assertions are wrong. The Louisiana Constitution unambiguously vests district attorneys with state power by declaring that each district attorney "shall have **charge of** every criminal prosecution **by the state** in his district." LA. CONST. art. 5, § 26(B) (emphasis added). Furthermore, the contention that Louisiana district attorneys are not part of the state's judicial branch has been rebutted by the ultimate authority on the interpretation of Louisiana law. The Louisiana Supreme Court has consistently held that "[a] district attorney is a constitutional officer who serves in the judicial branch and exercises a portion of the sovereign power of the state within

7

the district of his office." *Bd. of Comm'rs of Orleans Levee Dist. v. Connick*, 654 So. 2d 1073, 1077 (La. 1995) (quotation omitted); *see also* Doc. No. 11-1 at 12–13 (listing cases).

With these arguments refuted, Mr. Dent is left with only one argument to rely on—the Louisiana legislation providing that the state is not vicariously liable for the torts of district attorneys and their employees. *See* Doc. No. 13 at 13–14. But as discussed in the initial memorandum, *see* Doc. No. 11-1 at 26–29, considerations of liability are unhelpful and misleading. The fact that Louisiana has exercised its sovereign immunity by limiting state liability for the actions of officials such as district attorneys does not, and cannot, negate the clear constitutional language providing that district attorneys act on behalf of the state in some circumstances. Mr. Dent argues, quoting the opinion in *Smith v. Williams*, that Louisiana appellate courts have construed the legislation as "evidence of a strong legislative intent to designate Louisiana district attorneys as local officers who do not act for the State on the particular issue of their evidence disclosure policies and practices." Doc. No. 13 at 14 (quoting *Smith*, 2023 WL 2263841, at *9). But as discussed in the initial memorandum, this is simply not true. *See* Doc. No. 11-1 at 28. Mr. Dent has not cited a single Louisiana appellate decision holding, or even suggesting, such a thing. And, in any event, the Louisiana Supreme Court has made clear that district attorneys act on behalf of the state. *See* Doc. No. 11-1 at 12–13.

## V.   Mr. Dent has not shown any relevant difference in law that would justify treating Louisiana district attorneys differently from those in Texas and Mississippi.

Finally, Mr. Dent argues that there is no unfairness in treating Louisiana district attorneys differently from district attorneys in Texas and Mississippi because they are in fact different.[3] But

---

[3] *See, e.g.*, Doc. No. 13 at 19 n.9 (quoting *McMillian*, 520 U.S. at 795 ("[S]ince it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another.")).

as explained at length in the initial memorandum, Louisiana district attorneys are not different in any relevant way. *See* Doc. No. 11-1 at 7–15. The same factors that led the Fifth Circuit to conclude in *Arnone* that Texas district attorneys act on behalf of the state also exist under Louisiana law. Mr. Dent makes no effort to compare the relevant laws of Louisiana, Texas, and Mississippi and identify any differences that would justify a finding that district attorneys act on behalf of the state in Texas and Mississippi but not in Louisiana.

## CONCLUSION

For the reasons explained above and in the initial memorandum, Plaintiff Cedric Dent's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

*/s/ Matthew J. Paul*
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY REUTER THORNTON ALFORD LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*

9